**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
www.flmb.uscourts.gov

In re:

EIHAB H. TAWFIK, M.D., P.A.,              Case No. 3:18-bk-01164-JAF
*dba Christ Medical Center,*                 Chapter 11
*dba Town Center Medical Celebration,*

             Debtor.
_____/

**OBJECTION TO DEBTOR'S EMERGENCY MOTION**
**FOR AUTHORITY TO USE CASH COLLATERAL AND**
**REQUEST FOR EMERGENCY PRELIMINARY HEARING**
(Doc. No. 9)

Central Bank, by and through undersigned counsel, hereby files this Objection to Debtor's Emergency Motion for Authority to Use Cash Collateral and Request for Emergency Preliminary Hearing (Doc. No. 9) (the "Cash Collateral Motion"), and in support states as follows:

**Requested Relief**

Central Bank objects to the Cash Collateral Motion because the Debtor is attempting to use Central Bank's cash collateral without providing Central Bank with adequate protection. The Debtor's proposed adequate protection of a replacement lien falls short of adequately protecting Central Bank's interest in cash collateral which should include, at a minimum, adequate protection payments, immediate payment and continuing escrow of personal property insurance, adequate financial reporting, and inspection rights of the Debtor's personal property.

**Background**

1.  The Debtor, Eihab H. Tawfik, M.D., P.A. (the "Debtor") is a Florida professional association operating out of five medical practices throughout Central Florida. The Debtor is run principally by its sole shareholder, director and officer, Dr. Eihab H. Tawfik ("Dr. Tawfik").

2.  On or about April 2, 2015, the Debtor executed and delivered to Central Bank three notes in the original principal amounts of $1,500,000, $780,000 and $500,000 (the "Notes"). Central Bank owns and holds the Notes and, subject to the automatic stay, is entitled to enforce the same under Florida law. As security for the Notes, the Debtor, Dr. Tawfik and a related entity, Citrus Diabetes Treatment Center, LLC (the owner of certain real estate in which the Debtor operates), executed and delivered to Central Bank, *inter alia,* a Security Agreement providing Central Bank with a blanket lien on the Debtor's personal property. Central Bank filed a UCC-1 to perfect its security interest in virtually all of the Debtor's personal property.

3.  As of the Petition Date, the Debtor owes Central Bank approximately $2,600,000.00.

4.  On April 11, 2018, (the "Petition Date"), the Debtor filed a bare-bones Chapter 11 bankruptcy petition to halt Central Bank's replevin action filed in the Circuit Court for the Fifth Judicial Circuit in and for Citrus County, Florida, Case No. 2018-ca-158 (the "State Court Case").

5.  Admittedly, pre-petition the Debtor had significant financial issues, in part because Medicare challenged the Debtor's billing practices. See Doc. No. 9. The Debtor

has not paid Central Bank since December 2, 2017.

6. The Debtor provides in its Case Management Summary that the Debtor is owed approximately $1,600,000 in accounts receivable from Medicare, and it has personal property with an approximate value of $4,000,000. While this case is in its infancy and Debtor has not filed any operating reports to date, Central Bank has significant concerns about the accuracy of the Debtor's financial reporting.[1] For at least two years prior to the Petition Date, the Debtor failed to provide financial information to Central Bank despite Central Bank's request for this information. Further, before the Petition Date, Central Bank was chased away from the Debtor's facility when it attempted to locate and inspect its physical collateral. As such, it is difficult to gauge the accuracy of the Debtor's statements and projection. According to the proposed budget, however, there is cash available from accounts receivables to provide Central Bank with monthly adequate protection payments.

7. Another significant concern of Central Bank is the condition of the Debtor's personal property. Despite difficulties in locating and inspecting its collateral, Central Bank was able to evaluate the condition of certain personal property through a third-party inspection. The property report generated as a result of such inspection indicated the Debtor's medical equipment has not been adequately maintained. Additionally, and most concerning, is that the personal property insurance applicable to the Debtor's personal property has lapsed. Central Bank requires immediate reinstatement of the personal property insurance to avoid loss of its collateral, and the

---

[1] Upon information and belief Central Bank believes the value of the Debtor's assets is significantly less.

listing of Central Bank as a loss payee.

## Objection to Cash Collateral Motion

8. The Cash Collateral Motion fails to protect Central Bank's interest in its collateral. Under 11 U.S.C. §363(c)(2), a debtor may only use, sell or lease cash collateral if one of two circumstances exist: (1) the secured creditor consents; or (2) the bankruptcy court approves a debtor's use of cash collateral in accordance with the other provisions of the Bankruptcy Code. Section 363(e) of the Bankruptcy Code further provides that the court "shall prohibit or conduction such use, sale or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(d); *In re Empire for Him, Inc.,* 1 F.3d 1156, 1160 (11th Cir. 1993). The debtor bears the burden of proof on the issue of adequate protection. § 363(p).

9. The purpose behind the "adequate protection" requirement is to ensure that the value of a lender's secured interest in its collateral does not diminish throughout the course of a chapter 11 case. *In re George Ruggiere Chrysler-Plymouth, Inc.,* 727 F.2d 1017, 1019 (11th Cir. 1984) (citations omitted).

10. While section 361 of the Bankruptcy Code provides a few potentially appropriate forms of "adequate protection," the Bankruptcy Code does not specifically define the term. *George Ruggiere*, 727 F.2d at 1019. In the context of a debtor's request to utilize cash collateral, the form of adequate protection provided "must not be illusory," but should be "of the most indubitable equivalence." *In re Goode*, 235 B.R. 584, 589 (Bankr. E.D. Tex. 1999).

11. Here, the adequate protection contemplated in the Cash Collateral Motion

4

is illusory.  The Debtor fails to provide Central Bank with anything other than the belief that continuing the Debtor's operations will adequately protect Central Bank's interests. The Debtor fails, however, to provide any evidence to support this assertion or demonstrate that the value of Central Bank's security is preserved.  Given the significant pre-petition events that gave rise to the Debtor's filing, the mere continued operation of the Debtor fails to provide the necessary adequate protection.

12. Central Bank does not flatly oppose the use of its cash collateral, provided it receives additional and necessary protections such as post-petition payments, immediate proof of insurance, and various budgetary and reporting requirements to ensure Central Bank is adequately protected. Accordingly, Central Bank requests the following adequate protection:

a) The payment of monthly adequate protection payments in the amount of $20,010.68, *nunc pro tunc* to the Petition Date, consistent with the Debtor's monthly payment obligations to Central Bank;

b) A replacement lien in any rents, profits, proceeds, accounts receivable and other personal property to the same extent and with the same validity and priority as its prepetition lien, without the need to file or execute any documents as may otherwise be required under applicable non-bankruptcy law;

c) The immediate reinstatement of property insurance covering all of the Debtor's personal property and proof of same, and the addition

        of Central Bank as a loss payee and/or additional insured with respect to such insurance;

    d)    The continued monthly payment into escrow of one-twelfth (1/12) of the Debtor's personal property tax obligation;

    e)    The right to inspect the Debtor's personal property upon providing twenty-four (24) hours' notice to Debtor's counsel; and

    f)    Significant and detailed reporting regarding the Debtor's revenues and accounts receivable.

13.    Finally, Central Bank requests additional information with respect to how the budget line items were derived and the checks and balances that the Debtor has in place to protect and account for all cash collateral.

**WHEREFORE**, the Central Bank respectfully requests that the Court enter an order: (i) sustaining its Objection; (ii) granting the Debtor's Cash Collateral Motion only to the extent it includes additional adequate protections to Central Bank as set forth above; and (iii) granting Central Bank such other and further relief as the Court deems appropriate.

    */s/ Megan W. Murray*
Lara R. Fernandez, Esq.
Florida Bar No. 88500
lfernandez@trenam.com
Megan W. Murray, Esq.
Florida Bar No. 0093922
mwmurray@trenam.com
TRENAM, KEMKER, SCHARF, BARKIN, FRYE, O'NEILL & MULLIS, P.A.
101 E. Kennedy Blvd., Suite 2700
Tampa, Florida 33602

Telephone: 813-227-7474
*Attorneys for Central Bank*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 15, 2018, a true and correct copy of the foregoing **OBJECTION TO DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL AND REQUEST FOR EMERGENCY PRELIMINARY HEARING** was furnished by CM/ECF and/or U.S. Mail to **Eihab H. Tawfik, M.D., P.A.,** 7394 West Gulf to Lake Highway, Crystal River, FL 34429; **Justin M. Luna, Esq.**, jluna@lseblaw.com, Latham, Shuker, Eden & Beaudine, LLP, PO Box 3353, Orlando, FL 32802-3353; **United States Trustee – JAX11**, Office of the United States Trustee, George C. Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801; and all registered **CM/ECF recipients**.

*/s/ Megan W. Murray*
Attorney