UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re

EIHAB H. TAWFIK, M.D., P.A.,

Debtor.

_____/

Case No.: 3:18-bk-01164-JAF

Chapter: 11

## IBERIABANK'S LIMITED OBJECTION TO DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL AND REQUEST FOR EMERGENCY PRELIMINARY HEARING

IBERIABANK, through its undersigned attorneys, hereby files its limited objection to the Emergency Motion to Authorize Use of Cash Collateral and Request for Emergency Preliminary Hearing (D.E. 9) (the "Cash Collateral Motion"), filed by Debtor, Eihab Tawfik, M.D., P.A. and in support thereof respectfully states:

### PRELIMINARY STATEMENT

1. IBERIABANK objects to the Cash Collateral Motion on the grounds that IBERIABANK holds a first priority lien on multiple pieces of personal property along with all profits and income derived from their interest in certain real property further described herein, it is the belief of IBERIABANK that the Debtor's assets are currently intermingled with other assets in use by the Debtor and its affiliated facilities. In the Cash Collateral Motion the Debtor alleges that Capital Bank may have the ability to assert a first priority security interest in all of the Debtor's personal property including cash generated by the Debtor's operations by virtue of a blanket lien on the Debtor's personal property. However, at this point in time there is no ability to determine which proceeds are being generated by certain facilities or by certain collateral of the Debtor. Central Bank has requested adequate protection payments in the amount of $20,010.68 in their Objection to Debtor's Emergency Motion for Authority to Use Cash

1

Collateral and Request for Emergency Preliminary Hearing (D.E. 18) ("Central Bank's Objection"). IBERIABANK has no objection to Central Bank's request for adequate protection as long as the funds used to make those payments are derived specifically from the direct operations of the Debtor, not its unrelated associated facilities or collateral. IBERIABANK does not deny that Central Bank may have a first priority lien interest in certain personal property or proceeds as well. It is imperative that the Debtor provide financial statements that show the ownership and financial statements for each facility on a monthly basis in order to determine the priority status of creditors in this bankruptcy.

2.	In addition IBERIABANK recently paid 2015 and 2016 tangible personal property taxes in the amount of $69,665.34 in order to prevent seizure of personal property by the taxing authority. IBERIABANK has requested through discovery in its state court action against Citrus Diabetes Treatment, LLC that personal property tax returns be turned over to IBERIABANK to determine the personal property contained therein. In Central Bank's Objection they assert that the Debtor has an escrow account that could potentially be applied to a portion of those taxes.

## BACKGROUND

3.	On April 11, 2018 (the "Petition Date"), Eihab Tawfik, M.D., P.A. ( the "Debtor) filed a voluntary Chapter 11 petition in the United States Bankruptcy Court, Middle District of Florida, Jacksonville Division. Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to 11 U.S.C. § 1108 and Local Rule 2081-1.

4.	Old Florida National Bank (hereafter referred to as IBERIABANK), Citrus Diabetes, Tawfik and Tawfik P.A. entered into that certain Loan Agreement dated October 25, 2011, wherein IBERIABANK agreed to loan Citrus Diabetes Treatment Center, LLC $2,559,000.00 (the "Loan"), as subsequently amended by that certain Loan and Note

Modification Agreement dated October 25, 2012, executed by IBERIABANK, Citrus Diabetes, Tawfik and Tawfik P.A. (collectively, the "Loan Agreement"). True and correct copies of the documents comprising the Loan Agreement are attached hereto as Composite Exhibit "A."

5. The Loan is currently evidenced by that certain Mortgage Note dated October 25, 2011, in the original principal amount of $2,559,000.00, executed and delivered by Citrus Diabetes in favor of IBERIABANK, as modified by that certain Allonge dated October 25, 2012, executed by Citrus Diabetes in favor of IBERIABANK, as modified again by that certain Loan and Note Modification Agreement dated October 25, 2012, executed by IBERIABANK, Citrus Diabetes, Tawfik and Tawfik P.A. (collectively, the "Note"). True and correct copies of the documents comprising the Note are attached hereto as Composite Exhibit "B."

6. To secure the indebtedness due on the Loan, Citrus Diabetes executed that certain Mortgage, Assignment of Rents and Security Agreement dated October 25, 2011, as mortgagor, in favor of IBERIABANK, as mortgagee, recorded in O.R. Book 2447, Pages 1065 et seq., as modified by that certain Notice of Future Advance Limitation recorded on November 7, 2011 in O.R. Book 2447, Pages 1121 et seq., as modified again by that certain Loan and Note Modification Agreement dated October 25, 2012, executed by IBERIABANK, Citrus Diabetes, Tawfik and Tawfik P.A., and recorded in O.R. Book 2517, Pages 169 et seq., all in the public records of Citrus County, Florida (collectively, the "Mortgage"). As additional security, the Mortgage also constitutes a security agreement (the "Security Agreement") wherein IBERIABANK was granted a security interest in certain Personal Property (defined below) owned by Citrus Diabetes. True and correct copies of the documents comprising the Mortgage are attached hereto as Composite Exhibit "C."

7. The indebtedness owed on the Loan is further secured by that certain Assignment

of Leases, Rents and Profits dated October 25, 2011, executed by Citrus Diabetes, as assignor, in favor of IBERIABANK, as assignee, recorded in O.R. Book 2447, Pages 1078 et seq., of the public records of Citrus County, Florida (the "Assignment of Rents"). A true and correct copy of the Assignment of Rents is attached hereto as Exhibit "D."

8. The Mortgage and the Assignment of Rents encumber that certain real property located in Citrus County, Florida, that is more particularly described in Exhibit "E" (the "Real Property").

9. IBERIABANK's security interest in the Personal Property, as evidenced by the Mortgage and the Security Agreement, is perfected by (i) that certain UCC-1 Financing Statement naming Citrus Diabetes as debtor, recorded in O.R. Book 2447, Pages 1083 et seq., of the public records of Citrus County, Florida and (ii) that certain UCC-1 Financing Statement bearing Document No. 201105614059, naming Citrus Diabetes as debtor, as restated by that certain UCC-3 Financing Statement bearing Document No. 201309881500, as continued by that certain UCC-3 Financing Statement Amendment bearing Document No. 201607801211 (collectively, the "Personal Property Financing Statement"). True and correct copies of the documents comprising the Personal Property Financing Statement are attached hereto as Composite Exhibit "F."

10. The Security Agreement and Personal Property Financing Statement encumber and perfect IBERIABANK's interest in that certain personal property located in Citrus County, Florida, which is more particularly described in the attached Exhibit "G" (the "Personal Property").

11. The indebtedness owed on the Loan is guaranteed by those certain Continuing Guaranty Agreements dated October 25, 2011, executed by Tawfik and Tawfik P.A.

(collectively, the "Guarantors") in favor of IBERIABANK, as restated by that certain Loan and Note Modification Agreement dated October 25, 2012, executed by IBERIABANK, Citrus Diabetes and the Guarantors (collectively, the "Guarantees"). True and correct copies of the documents comprising the Guarantees are attached hereto in Composite Exhibit "H."

12. The Loan Agreement, the Note, the Mortgage, the Assignment of Rents, the Personal Property Financing Statement, and the Guarantees shall collectively be referred to as the "Loan Documents."

13. IBERIABANK is the owner and holder of the Note and Loan Documents by virtue of that certain merger dated effective October 26, 2014, pursuant to the Articles of Merger of Old Florida National Bank into IBERIABANK (the "Articles of Merger"). A true and correct copy of the Articles of Merger, as filed with the Florida Department of State Division of Corporations, is attached hereto as Exhibit "I."

14. Citrus Diabetes and the Guarantors defaulted under the terms of the Note and Loan Documents by, among other things, failing to make the monthly payment due on July 25, 2017, or any subsequent payments due under the Note.

## CASH COLLATERAL

15. The Cash Collateral Motion has the potential to leave IBERIABANK's interest in its collateral unprotected. IBERIABANK holds a perfected first position security interest in the personal property and all proceeds derived from the Mortgaged Property pursuant to the Loan Documents. The cash collateral at hand could constitute the collateral of IBERIABANK under § 363(a) of the Bankruptcy Code (the "Code"). In this specific instance the Debtor has only offered the minimum of what is required under §361 of the Code to satisfy its requirements including but not limited to replacement liens to the same extent, priority and validity as its pre-

petition liens.

16. As mentioned above the proposed budget, attached to the Cash Collateral Motion does not provide for the segregation of funds and tracing of the cash collateral attributable to each secured creditors' cash collateral where appropriate. In addition, the proposed budget does not provide sufficient detail for IBERIABANK, this Court or any other creditor to ascertain whether the proposed expenses are reasonable and necessary to the preservation of the collateral.

17. It is imperative that Debtor be required to submit monthly budgets that are specifically related to the cash collateral of the Debtor only. As stated in the Case Management Summary, the Debtor is owed approximately $1,600,000 in accounts receivable from Medicare that could be on the account of multiple facilities. In addition the Debtor should be required to provide a list of each secured creditors equipment etc. and attach it to the monthly financial statements.

## **CONCLUSION**

WHEREFORE, IBERIABANK respectfully requests that the Court (i) sustain IBERIABANK's limited objection; (ii) grant Debtor's Cash Collateral Motion only to the extent that it includes protections for all secured creditors; and (iii) such other and further relief as the Court deems appropriate.

Dated: April 16, 2018

                                    **BURR FORMAN, LLP**

                                    /s/ Michael S. Waskiewicz
                                    Michael S. Waskiewicz, Esq.
                                    Florida Bar No. 693642
                                    50 North Laura Street, Suite 3000
                                    Jacksonville, Florida 32202
                                    Phone: (904) 232-7200
                                    Fax: (904) 232-7201
                                    E-mail: MWaskiewicz@burr.com

                                    Attorneys for IBERIABANK

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on April 16, 2018, I electronically filed the foregoing with the Clerk of Court by using the Case Management/Electronic Case Filing ("CM/ECF") system which will send notice of electronic filing to all parties indicated on the electronic filing receipt.

                                    /s/ Michael S. Waskiewicz
                                             Attorney